UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY RUSS,<br><br>  Petitioner,<br><br>  v.<br><br>BRANDON PRICE,<br><br>  Respondent. | Case No.   1:21-cv-01592-HBK (HC)<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 7) |

Petitioner Roy Russ ("Petitioner"), a civil detainee at Coalinga State Hospital, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1, "Petition"). Petitioner challenges his continued commitment stemming from the state court's denial of his October 30, 2020 state habeas petition for post-commitment relief. (*Id.* at 6). The Petition raises three grounds for relief (restated): (1) Petitioner's continued commitment based solely on his diagnosis of Anti-Social Personality Disorder ("ASPD") with a finding that the diagnosis does not predispose him to engage in commission of sexual offenses violates his rights under the Fourteenth Amendment; (2) Petitioner's continued commitment absent a diagnosed

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 13).

mental disorder within the terms of the SVPA violates his Fourteenth Amendment due process rights; and (3) his continued commitment violates the Equal Protection Clause. (Doc. No. 1 at 19-30). Respondent, the Executive Director, Department of State Hospitals-Coalinga, filed a Motion to Dismiss in response. (Doc. No. 7). Respondent argues the claims are not cognizable for federal habeas relief and otherwise are meritless. (*Id*. at 2). Respondent attaches the state court record in support of the Motion to Dismiss. (Doc. No. 7 at 13-1142).[2] Petitioner filed a reply. (Doc. No. 11). For the reasons set forth below, the Court grants Respondent's Motion to Dismiss and denies Petitioner relief on his Petition.

## I. BACKGROUND

### A. Petitioner's Initial Commitment and Challenge

On April 8, 1988, Petitioner pled guilty to committing a lewd and lascivious act on a child under the age of fourteen in violation of California Penal Code § 288(a). *See People v. Russ*, No. F056349, 2009 WL 2232667, at *2 (Cal. App. July 27, 200).[3] (Exh. 30, Doc. No. 7 at 1134). On June 29, 2007, the state prosecutor petitioned the Kern County Superior Court for an order committing Petitioner under California's Sexually Violent Predator Act, California Welfare and Institutions Code § 6600 et. seq., ("SVPA"). (*Id*.). On August 26, 2008, following a hearing, the Superior Court found Petitioner met the criteria to be designated a Sexually Violent Predator ("SVP"). (*Id*. at 1136). Specifically, the Superior Court found, "true, beyond a reasonable doubt, that [Petitioner] sustained a conviction for a sexually violent offense, and that [Petitioner] had two mental disorders: paraphilia not otherwise specified, and a psychotic disorder not otherwise specified." (*Id*. at 1137). The Court further found beyond a reasonable doubt that Petitioner "was not amenable to treatment." (*Id*). The Superior Court ordered Petitioner's commitment to the State Department of Mental Health for an unspecified term. (*Id*.).

---

[2] Petitioner attaches portions of the state court record to his Petition. Because the respondent is tasked with filing the relevant state court record, the undersigned refers to the state court record appended by Respondent to its Motion to Dismiss as "Exh. _". *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 5.

[3] Unless a petitioner demonstrates by clear and convincing evidence otherwise, a presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

1    Petitioner's federal challenges to his 2008 commitment alleging violations of his federal
2    constitutional rights under the Due Process and Equal Protection Clauses and his civil
3    commitment as constituting an Ex post Facto violation were denied on the merits in 2011. *Russ v.*
4    *Ahlin*, Case No. 09-cv-01904-DLB, 2011 WL 4048776 (E.D. Cal. Sept. 9, 2011) (Exh. 29, Doc.
5    No.7 at 1113-1131).

### B. Petitioner's Additional Post-Commitment Challenges

In a December 2013 annual evaluation, one doctor reported that Petitioner no longer fit the criteria for commitment as an SVP, although his mental condition had not changed. (*See* Exh. 25, Doc. No. 7 at 1093). After Coalinga State Hospital declined to request judicial review of Petitioner's commitment pursuant to Cal. Welf. & Inst. Code § 6605(c), the Fresno County Superior Court ordered the Hospital to file a habeas petition on Petitioner's behalf seeking judicial review of Petitioner's SVP status. (*Id*.). In July 2016, following an evidentiary hearing during which three medical experts testified that Petitioner suffered from ASPD and alcoholic use disorder, and two of the three experts concluded that Petitioner continued to meet the criteria of a SVP, the Kern County Superior Court denied Petitioner habeas relief and found he continued to meet the criteria of an SVP under the SVPA. (*Id*. at 1095-97). In 2018, Petitioner filed a habeas petition in the Eastern District of California challenging the July 2016 Kern County Superior Court decision denying Petitioner post-commitment release. (Exh. 11, Doc. No. 7 at 142-147). In 2020, Petitioner's 2018 federal habeas petition was denied as untimely. *Russ v. Price*, Case No. 18-cv-01154, 2020 WL 6747739 (E.D. Cal. May 15, 2020*), findings and recommendations adopted by* 2020 WL 6742736 (E.D. Cal. Nov. 17, 2020) (Exh. 9-10, Doc. 7 at 132-40).

### C. The Instant Petition

Petitioner filed a state habeas petition in the Kern County Superior Court challenging his continued commitment on October 30, 2020. The Kern County Superior Court denied Petitioner relief in a reasoned decision on February 21, 2021. (Exh. 8, Doc. No. 7 at 127-130). Petitioner appealed the denial of relief and both Fifth Appellate Court of Appeal and California Supreme Court summarily denied relief. (Exh.7, Doc. No. 7 at 125 and Exh. 2, Doc. No. 7 at 18). Petitioner now proceeds before this Court on his federal Petition.

## II.   APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition.  R. Governing 2254 Cases 4.  The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent."  A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases.  *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).  Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief.  *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

### A.  The Sexually Violent Predator Act (SVPA)

The SVPA provides for the civil commitment of a person found to be "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).  "Diagnosed mental disorder," as defined in the SVPA, "includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."  § 6600(a)(4)(c).

"Before an SVP commitment petition is filed in Superior Court, the California Department of Corrections and Rehabilitation ("CDCR") has screened an inmate, determined he is likely to be an SVP, and referred him to the California Department of State Hospitals where the inmate has undergone a 'full evaluation' by two mental health experts who 'have concurred that the person currently meets the criteria for commitment under the SVPA.' . . . Although initial evaluations … must agree, a lack of concurrence between updated or replacement evaluations does not require dismissal of the petition."  *Mackenzie v. Price*, 2022 WL 16735363, at *2 (C.D. Cal. May 5, 2022) (citing *Reilly v. Superior Court*, 57 Cal. 4th 641, 646-48 (2013)).  After the petition is filed, the superior court must determine whether there is probable cause to believe that

the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release; and if the judge determines there is probable cause, then a jury trial is conducted at which the state must prove beyond a reasonable doubt that the individual meets the criteria as an SVP. §§ 6602-03.

Individuals found to be SVPs are committed to the custody of the DSH for an indeterminate term of commitment. *See id.* § 6604. The SVPA requires the DSH to conduct examinations of civilly committed persons and to submit an annual report with the committing court considering "whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative [] or an unconditional discharge [] is in the best interest of the person and conditions can be imposed that would adequately protect the community." *Id.* §§ 6604.9(a), 6605.

**B. Ground One: State Law Claim Not Cognizable**

In his first ground for relief, Petitioner asserts that the Kern County Superior Court's finding that his ASPD diagnosis "alone" predisposes him to engage in sexual offenses under the SVPA violates his due process rights under the Fourteenth Amendment. Respondent correctly notes that "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout*, 562 U.S. at 219 (internal citations omitted). "'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (internal citations omitted). Rather, a federal habeas court is bound by the state court's determination concerning the provisions of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (quoting *Estelle*, 502 U.S. at 67-68 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")).

Petitioner's allegation that the California Superior Court mis-applied or misinterpreted the SVPA presents a state law violation and is therefore not grounds for federal habeas relief. *See*

*Page v. King*, 2020 WL 3057461, at *4 (E.D. Cal. June 9, 2020) ("how California defines a mental disorder is a matter of state law, and does not raise a constitutional claim."), *aff'd Page v. King*, 2021 WL 4690953 (9th Cir. 2021) (finding petitioner's argument that his recommitment procedures should be dismissed because his diagnoses of Paraphilia NOS and ASPD are "medically invalid under California law" are not cognizable on federal habeas because "federal habeas corpus relief does not lie for errors of state law."); *Webb v. Price*, 2022 WL 892695, at *3 (C.D. Cal. Feb. 23, 2022) (finding "petitioner simply alleges procedural and evidentiary errors with regard to California's application of the SVPA, a state law. The claims are therefore not cognizable on federal habeas review."). Whether the state court complied with California statutes and case law governing state post-conviction proceedings is a matter of state law that is not "addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989). In the absence of allegations that he is in custody in violation of the United States Constitution or federal law, Petitioner does not present a cognizable federal claim for habeas relief.

Moreover, Petitioner may not, as he attempts to do here, "transform a state-law issue into a federal one merely by labeling it a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Indeed, state statutes may create a liberty interest that forms the basis for a federal due process violation in limited circumstances. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1176 (S.D. Cal. Aug. 27, 2009) ("While state statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections, the instances in which due process can be invoked are significantly limited."). However, even assuming arguendo that Petitioner had a constitutionally protected liberty interest arising from SVPA provision requiring the diagnosis of a mental disorder, the Court cannot identify any violation of those provisions in this case. The Superior Court considered Petitioner's claim that his constitutional rights were violated because his "current" diagnosis of ASPD and alcohol use disorder is insufficient to designate him as a SVP, and concluded:

> In *Hubbart v. Superior Court*, (1999) 19 Cal.4th 1138, the California Supreme Court rejected the suggestion that the SVP Act was unconstitutional because ASPD and other conditions characterized by an inability to control violent antisocial behavior, such as paraphilia, are not expressly included in the Act's definition of a diagnosed mental disorder. (*Id*. at 1158) The court reasoned that no controlling authority 'purports to limit the range of mental impairments that may lead to the 'permissible' confinement of dangerous and disturbed individuals.' (*Id*. at 1161.) In so holding, the court necessarily found that ASPD or paraphilia can qualify as diagnosed mental disorders under the SVP Act.
>
> Whether a diagnosis of ASPD can be the basis for an SVP finding was addressed in the case of *People v. Burris* (2003) 102 Cal. App. 4th 1096. In *Burris*, it was argued that an antisocial personality disorder is not a 'mental disorder' within the meaning of the SVP Act. The issue was reasoned by the court in the context of whether anything within the statute precludes it. After examination of the language and the history of the statute, it was determined there was nothing that prevented a 'personality disorder' from qualifying as a 'mental disorder' within the meaning of the Act.

(Exh. 8; Doc. No. 7 at 127-130). Petitioner correctly notes an individual must have a "diagnosed medical disorder" to meet the SVP criteria under the SVPA. However, as recognized by the Superior Court, and unchallenged by Petitioner, it is well-settled under California law that a diagnosis of ASPD can form the basis of an SVP finding within the meaning of the SVPA because "there was nothing that prevented a 'personality disorder' from qualifying as a 'mental disorder' within the meaning of the Act." (Exh. 8 at 129) (citing *People v. Burris*, 102 Cal. App. 4th 1096 (2002)).

Further, both as to Petitioner's argument that his ASPD does not qualify as a "diagnosed mental disorder" under the SVPA, and to the extent Petitioner is arguing that his continued commitment under the SVPA violates his due process rights because in 2013 a single doctor opined that his ASPD "does not predispose him to engage in commission of sexual offenses" (*see* Doc. No. 1 at 48), "[t]he federal constitutional right to due process does not require civil commitment of an SVP to be based upon a uniformly recognized mental health disorder. States may, in defining who may be civilly committed, employ mental health categories that 'do not fit precisely with the definitions employed by the medical community.'" *Page v. King*, 2015 WL 5569434, at *4 (N.D. Cal. Sep. 18, 2015) (citing *Kansas v. Hendricks*, 521 U.S. 346, 359 (1997)) (also holding that the existence of a disagreement between doctors as to whether petitioner

qualified as an SVP under the SVPA does not render a petitioner's commitment violative of due process). The United States District Court for the Eastern District of California has also squarely addressed the issue of whether ASPD can be categorized as a "diagnosed mental disorder" under the SVPA and found:

> In *Hubbart v. Superior Court*, 19 Cal. 4th 1138 (1999), the California Supreme Court rejected the appellant's request to strike down the SVPA because it does not expressly exclude antisocial personality disorders or other conditions characterized by an inability to control violent behavior, such as paraphilia, from being categorized as a "diagnosable mental disorder." In so ruling, the court necessarily found that these conditions can be mental disorders under the SVPA if coupled with a finding of current dangerousness. Likewise, in an unpublished opinion, the California Court of Appeals rejected the contention that an antisocial personality disorder diagnosis cannot provide the basis of an SVPA commitment. *People v. Swain*, 2010 WL 717687, at *3 (Cal. Ct. App. Mar. 3, 2010). In *Swain*, the court held, "We have found no authority to support Swain's position that an antisocial personality disorder alone cannot form the basis of an SVP commitment where, like here, the jury makes the required finding that the disorder makes him a danger to the public because, as a result of the disorder, it is likely that he will engage in sexually violent predatory conduct." In rejecting that anti-social personality disorder cannot, standing alone, be a "qualifying mental disorder" for purposes of the SVPA, the Court held, "An instruction that antisocial personality disorder is never a qualifying mental disorder under the statutory definition is an incorrect statement of the law and would properly have been refused if requested." *Id*. at *3. *See also Rainwater v. King*, 2017 WL 6040425, at *9, n. 2 (E.D. Cal. Dec. 6, 2017); *Leonard v. King*, 2014 WL 7239453, at *8, n. 6 (E.D. Cal. Dec. 17, 2014).

*Page v. King*, Case No.  , 2020 WL 3057461, at *5 (DATE).

Based on the foregoing, the Superior Court's finding that Petitioner's ongoing diagnosis of ASPD was a "diagnosed mental disorder" sufficient to designate him as an SVP does not violate either the SVPA or any constitutionally protected liberty interest. Accordingly, ground one of the Petition is dismissed because it fails to state a cognizable federal habeas claim and otherwise is without merit.

**C. Grounds Two and Three: Due Process and Equal Protection Claims are Denied**

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA requires a state prisoner seeking federal habeas relief to

first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and intentionally difficult to satisfy. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 572 U.S. at 419. Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

When reviewing a claim under the lens of § 2254(d), a "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

As discussed earlier, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court. An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning. *Richter*, 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100. This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others. *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id*. at 1196.

> When . . . there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.  If such disagreement is possible, then the petitioner's claim must be denied. *Ibid*.

*Sexton*, 138 S. Ct. at 2558.

### 1. Ground Two: Due Process

For purposes of reviewing Petitioner's second ground for relief, the Court considers the last reasoned decision on Petitioner's claims—that of the Kern County Superior Court on February 21, 2021.  Because the Superior Court rejected petitioner's second claim on the merits, the deferential standard of § 2254 applies.

In his second ground for relief Petitioner claims that his Fourteenth Amendment due process rights were violated because he continues to be committed absent a "diagnosed mental disorder" within the terms of the SVPA.  (Doc. No. 1 at 20-24).  Specifically, Petitioner argues that his continued commitment is in violation of *Foucha v. Louisiana*, 504 U.S. 71 (1992) because his diagnosis at the time of his initial civil confinement has now "disappeared," and as discussed *supra*, ASPD alone is not a "diagnosed mental disorder" sufficient to designate him as an SVP.  (*Id*.).  Respondent contends that, as with his first ground for relief, because Petitioner seeks a "federal-court merits review" of "state-prescribed procedures" his challenge to the Superior Court's ruling "does not give rise to a federal question cognizable on federal habeas review." (Doc. No. 7 at 10).  The Court disagrees.  While the two claims asserted by Petitioner are certainly interrelated, Petitioner distinguishes his second ground for relief as it directly asserts that his continued commitment absent a diagnosed mental disorder violates his federal due process rights because the "full commitment procedures" prescribed by the SVPA were not followed "according to the law."  (Doc. No. 9 at 2-3); *see O'Connor v. Donaldson*, 422 U.S. 563,

11

574 (1975) ("The fact that state law may have authorized confinement of the harmless mentally ill does not itself establish a constitutionally adequate purpose for the confinement."); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) ("We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards."); *Taylor v. Price*, 2021 WL 3848023, at *2 (N.D. Cal. Aug. 26, 2021) ("The constitutionality of state civil commitment proceedings may be challenged in federal habeas corpus once state remedies have been exhausted."). Furthermore, while not cited by Respondent, the Kern County Superior Court addressed Petitioner's due process claim and denied Petitioner relief as follows.

> Petitioner further contends that once the mental disorder that placed Petitioner under involuntary commitment disappeared, he must be released citing to the case of *Foucha v. Louisiana* (1992) 504 U.S. 71.
>
> In *Foucha*, the issue was not simply that the originally diagnosed condition had resolved—the doctors were unwilling to opine Foucha had any mental illness (*Foucha*, *supra*, 504 U.S. at pp. 74-75), and the court held commitment could not continue solely on the basis of dangerousness for which there was no evidence of anyway (*Id*. at 80-83). *Foucha* does not hold that resolution of certain symptoms or a change from the diagnosis that originally supported commitment precludes continuing commitment. The Court held in *Foucha* that the evidence indicated Mr. Foucha had no remaining mental illness.
>
> In the case at hand, Petitioner has been continually diagnosed with ASPD, which qualifies as a mental disorder under the SVP Act. Therefore, the holdings in the *Foucha* case are inapplicable. If, like *Foucha*, the evidence were to indicate that Petitioner has no remaining mental illness, then release would be required absent civil commitment proceedings. But that is not the situation here, where no doctor has opined that there are no further mental defects or disorders remaining.

(Exh. 8; Doc. No. 7 at 127-130).

Petitioner is entitled to habeas relief only if the Superior Court decision was contrary to, or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented. Here, Petitioner maintains that, as in *Foucha*, his continued commitment is in violation of his due process rights because his initial mental illness has now "disappeared" and

"potential dangerousness is not justification to commit . . . if no mental illness is present." (Doc. No. 1 at 23). This argument is unavailing. In *Foucha* the Court held that petitioner had no remaining mental illness and that commitment could not continue solely on the basis of potential dangerousness. 504 U.S. at 84. In contrast, here, the Superior Court found Petitioner's consistent and ongoing diagnosis of ASPD is a "diagnosed mental disorder" sufficient to designate him as an SVP under the SVPA. Thus, the Superior Court correctly distinguished *Foucha* on the facts, explicitly noting that "[i]f, like *Foucha*, the evidence were to indicate that Petitioner has no remaining mental illness, then release would be required absent civil commitment proceedings. But that is not the situation here, where no doctor has opined that there are no further mental defects or disorders remaining." (Exh. 8; Doc. No. 7 at 130); *see also Abraham v. Black*, 2020 WL 2128808, at *12 (N.D. Cal. May 5, 2020) (finding petitioner "does not point to any Supreme Court case that requires the present mental illness to be the same one diagnosed at the time of the NGI offense," and noting that in *Foucha* "the Supreme Court understood the relevant inquiry to be whether the insanity acquittee was currently mentally ill").

Accordingly, the Superior Court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent in *Foucha*, nor an unreasonable determination of the facts. Thus, Petitioner is not entitled to relief on his due process claim.

### 2. Ground Three: Equal Protection

For the purposes of reviewing Petitioner's third ground for relief, the Court notes that neither party makes any argument as to the appropriate standard of review under which the Court should review Petitioner's equal protection claim.[4] As noted above, the February 21, 2021

---

[4] Respondent makes the cursory argument that Petitioner's equal protection claim is an improper attempt to "transform an unreviewable state law claim – including the state court's application of state law under the SVPA and other California statutes – into a federal one simply by labeling his claim an Equal Protection violation." (Doc. No. 7 at 11). This argument is misplaced. In his petition for habeas corpus submitted to the California Supreme Court, and in the Petition currently before this Court, Petitioner asserts that his continued commitment under the SVPA violates his Fourteenth Amendment Equal Protection rights because he is not being "equally protected as other similarly situation statutes, or other SVP's." (*See* Doc. 1 at 24-29) (Exh. 3, Doc. No. 7 at 34-45). Relief by way of petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3).

1  California Superior Court finding is the last reasoned decision on Petitioner's claims. However,
2  the Superior Court did not make any findings as to Petitioner's equal protection claim, nor is the
3  Court able to ascertain whether the claim was properly raised in Petitioner's initial habeas petition
4  filed in the Superior Court because that petition does not appear to be provided in the records
5  provided by Respondent. (*See generally* Doc. No. 7). The Court's review of the record indicates
6  Petitioner did not raise an equal protection claim in his subsequent habeas petition submitted to
7  the California Court of Appeal (Exh. 5, Doc. No. 7 at 81-86); however, while not entirely
8  identical in substance, Petitioner did raise an equal protection claim in his most recent habeas
9  petition submitted to the California Supreme Court. (Exh. 3, Doc. No. 7 at 34-45). The
10 California Supreme Court denied the petition without comment or citation to authority. (Exh. 2,
11 Doc. No. 7 at 18).

12     The United States Supreme Court has stated that there exists a rebuttable presumption that
13 a federal claim was adjudicated on the merits in state court and AEDPA deference applies. *See*
14 *Richter*, 562 U.S. at 99, 131 S.Ct. 770 ("When a federal claim has been presented to a state court
15 and the state court has denied relief, it may be presumed that the state court adjudicated the claim
16 on the merits in the absence of any indication or state-law procedural principles to the contrary.");
17 *see also Johnson v. Williams*, 568 U.S. 289, 301, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013)
18 ("When a state court rejects a federal claim without expressly addressing that claim, a federal
19 habeas court must presume that the federal claim was adjudicated on the merits—but that
20 presumption can in some limited circumstances be rebutted."). Where, as here, there is no
21 reasoned state-court decision on the merits, the federal court "must determine what arguments or
22 theories . . . could have supported the state court's decision; and then it must ask whether it is
23 possible fairminded jurists could disagree that those arguments or theories are inconsistent with
24 the holding in a prior decision of this Court. If such disagreement is possible, then the
25 petitioner's claim must be denied." *Sexton*, 138 S. Ct. at 2558 (citing *Richter*, 562 U.S. at
26 102)(noting "this standard is difficult to meet 'because it is meant to be.'"). In other words, in
27 order to obtain habeas relief from a federal court, "a state prisoner must show that the state
28 court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

In his third ground for relief, Petitioner asserts that his continued commitment under the SVPA violates his Fourteenth Amendment Equal Protection rights because he is not being "equally protected as other similarly situation statutes, or other SVP's." (Doc. No. 1 at 24-29). More specifically, Petitioner argues that mentally disordered offenders ("MDOs") committed under California Penal Code § 2960 *et seq*. and persons who have been found not guilty by reason of insanity (NGIs") under California Penal Code § 1026 *et seq*. "are afforded more adequate constitutional protections than a SVPA commitment, e.g. release and commitment criteria," including, but not limited to (1) "allowing" the use of ASPD under the SVPA but "proscribing the use of" ASPD as a qualifying mental disorder in NGI and MDO commitment statutes; (2) requiring release proceedings for NGIs and MDOs when a mental disorder is in remission but denying that protection to SVPs; and (3) "allow[ing] for the commitment of persons, that were once NGI, MDSO and MDO, that had to be treated differently from an SVP, and upon a new commitment under the SVPA to now be treated identical, but based on the exact prior commitment and offense."[5] (*Id*.).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A petitioner can state an equal protection claim by alleging that similarly situated individuals were intentionally treated differently without a rational basis for the difference in treatment. *See Village of Willowbrook v.*

---

[5] As part of his "equal protection" argument, Petitioner asserts he "is not equally protected as NGI, MDSO, MDO or other SVP's" because his "continued commitment as an SVP is not based upon sex crimes or sexual behavior, but rather, vehicle code violations, and in addition, he is not in custody for 'anything related to sex crimes.'" Doc. No. 1 at 26. To the extent Petitioner is attempting to re-frame an ex post facto claim as an equal protection claim, this argument is unavailing. As previously held by this Court, "petitioner cannot succeed on his ex post facto ground for relief because he cannot show that the SVPA involves punishment. The Ninth Circuit has already concluded that California's SVPA is not subject to an ex post facto attack because the Act is civil in nature, and, as such, 'cannot be punitive in nature.'" *Russ v. Ahlin*, 2011 WL 4048776, at *9.

1 *Olech,* 528 U.S. 562, 564 (2000); *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601 (2008). "To prevail on [his] equal-protection claim, [Petitioner] 'must [first] show that a class that is similarly situated has been treated disparately.'" *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020).

Here, as an initial matter, the state court could have noted that Petitioner has failed to set forth any clearly established Supreme Court precedent – or indeed any federal law – supporting his position that SVPA violates Petitioner's equal protection rights because it treats SVPs different from "similarly situated" civil detainees such as NGIs and MDOs. "If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law." *Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004); *Rishor v. Ferguson*, 822 F.3d 482, 497 (9th Cir. 2016); *Carey v. Musladin*, 549 U.S. 70, 76 (2006) ("Given the lack of holdings from this Court regarding" the claim, "it cannot be said that the state court 'unreasab[ly] appli[ed] clearly established Federal law."). Because Petitioner has not identified clearly established federal law holding that equal protection is violated because SVPs are treated differently than similarly situated civil detainees, habeas relief is not warranted.

Indeed, the Ninth Circuit has repeatedly held "that there is no clearly established Supreme Court precedent prohibiting treating SVPs differently than MDOs and NGIs, finding them to be similarly situated, or applying any stricter scrutiny to such differentiation than rational basis review." *Johnson v. King*, 2017 WL 2968764, at *6 (N.D. Cal. July 12, 2017) (collecting cases); *Seeboth v. Allenby*, 789 F.3d 1099, 1105 (9th Cir. 2015) (not objectively unreasonable for state court to hold SVPA does not deprive SVPs of equal protection despite lack of timing provision as compared to statutes granting timing provision to MDOs and NGIs, and noting state court finding that MDOs and NGIs are *not* similarly situated for the purpose of challenging the lack of timing provision in the SVPA); *Taylor v. San Diego Cty.*, 800 F.3d 1164, 1171 (9th Cir. 2015) (California Court of Appeal did not unreasonably apply clearly established federal law in determining that SVPs are not similarly situated to other civilly committed individuals); *Hubbart v. Knapp*, 379 F.3d 773, 782 (9th Cir. 2004) (state court finding no equal protection violation

because both the SVPA and the law pertaining to MDOs "do not treat the committed person differently for the purposes of defining the requisite mental disorder" and was not contrary to Supreme Court authority).  As noted by Respondent, this court also previously rejected an equal protection claim by Petitioner as to his commitment under the SVPA as compared to individuals committed as MDOs or NGIs for two reasons: (1) "there is no clearly established federal law recognizing an equal protection challenge to a state's treatment of SVPs in relation to its treatment of other civil detainees such as MDOs and NGIs"; and (2) "even presuming the existence of controlling federal authority" and regardless of whether SVPs, MDOs, and NGIs are similarly situated, "the state's varying procedures as to these three groups appears to be 'substantially related to a sufficiently important government interest.'" *Russ v. Price*, 2011 WL 4048776, at *12 (E.D. Cal. Sept. 9, 2011).  Based on the foregoing arguments, the state court could have found that Petitioner has not met his burden to "[first] show that a class that is similarly situated has been treated disparately." *Boardman*, 978 F.3d at 1117.

In his opposition Petitioner argues Respondent relies on "outdated authority" in *Hubbart v Knapp*, 379 F.3d 773, 782 (9th Cir. 2004), and refers the Court to *People v. McKee*, 47 Cal. 4th 1172 (2010) in support of his argument because it "concluded that NGIs and SVPs are similarly situated, and similar equal protection problems exist regarding those two commitment schemes." (Doc. No. 9 at 4).  Petitioner's reliance on *McKee* is unavailing because the California Court of Appeal subsequently found that "notwithstanding the similarities" between SVPs, MDOs, and NGIs, "SVP's have diagnostic and treatment differences from MDOs and NGIs, thereby supporting the reasonable perception [] that the disparate treatment of SVP's under the amended [SVPA] is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered." *People v. McKee*, 207 Cal. App. 4th 1325, 1347 (2012); *see also Rainwater v. King*, 2017 WL 6040425, at *12  (E.D. Cal. Dec. 6, 2017) (noting petitioner "recognizes that the California Court of Appeal's decision in *McKee II* is fatal to his equal protection claim.").  Further, in 2015 the Ninth Circuit explicitly noted that "our ruling in *Hubbart* remains the law of the circuit" finding the California Court of Appeal did not unreasonably apply established federal law to petitioner's equal protection claim by determining

that SVPs are not similarly situated to other civilly committed offenders. *Taylor v. San Diego Cty.*, 800 F.3d 1164, 1171 (9th Cir. 2015) (noting "both we and the state of California have recognized that sexually violent predators are not similarly situated to other civilly committed individuals.").

All of the foregoing arguments could have supported the state court decision that the SVPA does not violate Petitioner's equal protection rights by treating SVPs different from NGIs and MDOs because they are not similarly situated, and led a fairminded jurist to disagree that those arguments are inconsistent with the holding in clearly established Supreme Court precedent. Because this disagreement is possible, Petitioner's equal protection claim must be denied.

////

////

////

## III. CERTIFICATE OF APPEALABILITY

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the Court declines to issue a certificate of appealability.

Accordingly, it is **ORDERED**:

1. Respondent's Motion to Dismiss (Doc. No. 7) is **GRANTED** to the extent set forth herein.

2. Petitioner is denied any relief on his Petition (Doc No. 1).

3. Petitioner is denied a certificate of appealability.

4. The Clerk of Court shall close this case.

Dated:   December 13, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE